Thank you. Good morning and welcome to the Ninth Circuit. You may proceed. Do each of you see the clock on your screen? All right. And would you like to reserve time, Ms. Collins? Yes, Your Honor. I'd like to reserve five minutes for rebuttal. All right. I'll try to help you watch and then you can also see the clock. You may proceed. Thank you. May it please the Court, Lauren Collins, Deputy Federal Public Defender on behalf of Petitioner Appellant Gregory Demetrulias. I'd like to begin by discussing the three guilt phase trial court errors and particularly the denial of the instruction on claimant right and how these errors prevented Mr. Demetrulias from defending against first-degree murder and the sole special circumstance. After that, I'd like to discuss the claim of ineffective assistance of counsel at the penalty phase. At Mr. Demetrulias' capital trial, the defense developed evidence that he went to Mr. Miller's house to reclaim $40 he had loaned to Mr. Miller. They got into an argument and Mr. Demetrulias stabbed Mr. Miller, self-defense. The prosecution alleged two theories of first-degree murder, felony murder based on a robbery and deliberate and premeditated murder. And they also alleged one robbery murder, special circumstance. But the three trial court errors at issue here unfairly prevented Mr. Demetrulias from defending against both of the first-degree murder theories. If I could start by talking about the claimant right theory. Mr. Demetrulias' defense to the felony murder as well as the sole special circumstance was what is known as a claimant right defense. If his intent was to reclaim $40, then he would not be guilty of first-degree robbery murder under the felony murder theory. And he would also not be guilty of the robbery murder special circumstance, which was the only thing in this case that made it death eligible. Counsel previewed this to the jury in his opening and developed evidence supporting this defense on cross and in his case in chief. In order to establish a reasonable doubt as to the robbery. And counsel asked that the jury be instructed that a belief that the right to reclaim. I think we're quite familiar with that. And we know that there was error acknowledged. And the question is prejudice. Is it not? That's true, Your Honor. The key issue here is whether the state court determination of prejudice, that the error was prejudice, was unreasonable. And it was unreasonable for several reasons. First of all, the California Supreme Court failed to reconcile key parts of the record. And conflated the claim of right defense and the robbery murder special circumstance with the self-defense to the deliberate and premeditated murder theory. The California Supreme Court unreasonably found that the claim of right and self-defense both rested solely on Mr. Demetriou's testimony. But, in fact, the claim of right defense was also based on testimony of other witnesses who had established that the two men were acquainted. As well as a pawn shop receipt showing that Mr. Miller had borrowed money and failed to repay it. And prosecution evidence that suggested that Mr. Demetriou went to the Roundup bar that evening in order to wait for someone. And after being asked to leave the bar, he paced back and forth outside as if he was waiting for someone. Another way that the California Supreme Court's harmlessness determination was unreasonable is because it found that the other instructions cured the error in failing to instruct on claim of right. But, notably, none of the other instructions could cure the error because they didn't include a definition of property and what was property. And, therefore, if the jury believed that Mr. Demetriou was intending to reclaim his own money, they still could have convicted him under the instructions that they were given. And one other reason that the California Supreme Court's determination of harmlessness was unreasonable is because they determined that any error was cured by counsel's closing argument. But it's not counsel's responsibility to instruct the jury. It's the court's responsibility. And so, counsel's closing argument couldn't have cured the error in this case. I have a question. Oh, sorry. Sorry. We're speaking at the same time. Wait just a moment. Okay. You want me to go ahead? But you've disappeared from the screen for some reason, Danielle. I don't see Judge Wardlaw in the video. Wait a second. Yeah. All of a sudden, I think Danielle looted. Danielle took me from the screen. Unfortunately not, Judge. This is Richard August. It appears that your camera signal is no longer being seen by Zoom. How can that be? I do not know, Judge. I don't have an answer for you, unfortunately. We can hear you fine, so why don't you proceed with your question, Judge Wardlaw. Okay. I could also go down and come back on and see if that corrects it. It sometimes does. My question is this. I think there is no question that there was sufficient evidence to support a conclusion by the jury that he went to Miller's house to collect a debt. But the question, we're examining whether the California Supreme Court unreasonably applied the Chapman substantial and injurious effect on the jury verdict standard. One way of looking at what the California Supreme Court did was that it said, basically saying we can't meet that standard because there are all these facts in front of the jury. And in particular, the jury was instructed on the need to find specific intent to rob or steal. So if the jury had found specific intent to rob or steal, which apparently it did, that would have negated a finding that he had gone to Miller's apartment to collect a debt. I'm not sure I caught the question, Your Honor. So one of the things, let me, you know what? Can you give me one minute to just get off this and come back on? It's very difficult to communicate. All right. We can see you now. Okay. I knew my camera was here, but all of a sudden something overrode it. Anyway, my question is, given all these facts that were in front of the jury, the jury, nonetheless, had to have found a specific intent to rob or steal. And that intent, that finding would preclude a finding that Miller had gone to, I mean, that Demetrious had gone to Miller's house to collect a debt. So the specific intent to rob or steal is predicated on the definition of property, what he was stealing. And because there was no instruction that told the jury that if he was reclaiming his own money, then the instructions were not clear on that point. And, you know, importantly, I'd like to emphasize that the evidence that a robbery took place or that any robbery took place, as the California Supreme Court found, was weak at best. And so this is not a situation where the evidence of a robbery was overwhelming. And the California Supreme Court confused or conflated the evidence that suggested that a robbery took place, which was very minimal, with the evidence in support of the evidence of a murder. One of my concerns really relates to the facts presented at trial as they then intersect with the standard that Judge Wardlaw referenced. And that is that any fair-minded jurors would agree with the California Supreme Court with respect to the Chapman harmlessness standard. And it seems to me that you have his testimony, but the whole issue of going to the bar and what he was doing there, you have pretty significant conflicting testimony, both in terms of dates, recollection, and any specifics that he was going there to meet this gentleman. So, that seems to be to not really move your needle across the line. The pawn shop, that might relate to whether you should get to the jury at all, but it doesn't really relate to his intent. And so it would seem to me that to sustain the defense here really comes down to his testimony, which of course the jury disbelieved on the self-defense and you could argue, well, maybe they wouldn't have disbelieved it on the other. But how does this factual construct overcome the legal standard that we have to meet? I think, Your Honor, I would go back to this idea that the jury certainly could have found that there was reasonable doubt as to the robbery. And, of course, we believe that there was evidence beyond Mr. Dimitriles' testimony that established the fact of the loan. But the other evidence... What is the evidence beyond his testimony that establishes the loan? Well, there was evidence that the two men knew each other, primarily, and that they had... I mean, when you're looking at weighing the evidence, I just didn't see any evidence that there was a loan other than his testimony. So, I would be interested if there's part of the record I should look at on that. I would add that even if the testimony, even the testimony of loan, was sufficient to entitle Mr. Dimitriles, excuse me, to this instruction on... Well, we know that, and the California Supreme Court said that, so we're looking at did it prejudice him in the end. And given the fact that there was really no evidence that a robbery took place, Mr. Miller had 30-some dollars in his pocket and had his jewelry on his person. And so, the evidence that this was a robbery, or an attempted robbery, was quite weak. But that's not on the table, really, is it? I think when we're talking about... Beyond the reasonable doubt, satisfaction on that. I think when we're talking about harmlessness and whether the absence of this jury instruction would have made a difference, I think it is significant that the evidence that a robbery took place was very weak. And it's also significant that this is the only special circumstance alleged. And so, if the jury is going to find that a robbery took place, it also means they would find that a felony murder took place. And I think in light of that, the failure to give this instruction really undermined Mr. Demetrius' ability to defend against the robbery murder, as well as the sole special circumstance. And I'd like to make sure that I leave enough time to discuss the ineffective assistance of counsel claim at the penalty phase. Unless the court has more questions about the claim of right issue, I'd like to just briefly talk about how this claim of right error combined with the other errors in this case. Counsel, Judge Gould, if I could just interject one question on the claim of right. Because I want to make sure that I've got your best advocacy on the answer. If the jury found that Demetrius had the specific intent to rob the victim, whether that's, there was a lot of evidence or sparse evidence on that. But if the jury made that determination, why does that not mean that the jury rejected the claim of right? Because in a simplistic way, how can you rob someone if you have the claim that the property is yours? And to answer that, I would say that they were never instructed on the claim of right. So they weren't given the option of making that finding. So without the claim of right instruction, there really was no claim of right defense for Mr. Demetrius. Even though that was the primary defense, that was his sole defense to the special circumstance. And I hope that answers your question. Thank you, Counsel. Thank you. I'd like to talk briefly about how the claim of right claim combined with the two other trial court error claims at guilt to render Mr. Demetrius' trial fundamentally unfair. After, we just discussed how the claim of right defense, excuse me, the failure to give the claim of right instruction, limited Mr. Demetrius' ability to defend against the felony murder and the robbery murder special circumstance. The two other errors went to the separate first degree murder theory of premeditated and delivered murder. And so taken together, all of these errors prevented Mr. Demetrius from defending against both of these theories. And they significantly narrowed the way the jury could consider the evidence before it. And unless the court has questions on that, I'd like to make sure I leave time to discuss the ineffectiveness of this. I have one factual question I just want to clarify. And I'm sure in light of my technical difficulties that our presiding judge will give you a little time. We're pretty flexible given all the issues. Right, right. But the Supreme Court made one factual finding that I was surprised to read. Because I wasn't sure about the evidence and where it came from or the specifics about it. And that is that they say that Demetrius took the knife from the boarding house's kitchen on the way to Miller's room. Is that a correct statement of the evidence at trial? That was a disputed fact at trial. And Mr. Demetrius testified that Mr. Miller had the knife and that he did not take the knife, did not take a knife from the kitchen. And to your Honor's point, I can add that under California law at the time, Mr. Demetrius could avail himself of a claim of right defense. Even if he had attempted to reclaim a debt by force. So even if he had armed himself before going to Mr. Miller's room. Okay, thank you. So you're saying that was a legal error by the California Supreme Court because there was disputed evidence? There was disputed evidence, yes. And so moving to the claim of ineffective assistance of counsel at the penalty phase. The jurors began the penalty phase with a grim picture of Mr. Demetrius. And because counsel failed to present readily available evidence of Mr. Demetrius' brain impairments and severe mental illness, they were given no good reason to spare his life. The ineffective assistance of counsel claim is considered under the familiar Strickland standard, which requires a showing of both deficient performance and prejudice. And the performance inquiry turns on whether counsel's assistance was reasonable considering all the circumstances. And here, counsel's purported strategic decisions for failing to present the readily available evidence were unreasonable. Particularly given the evidence that could have been presented. And I can briefly speak to some of the evidence that trial counsel could have presented had they been properly prepared and had properly done so. There was evidence of Mr. Demetrius' brain damage. He had been evaluated by a psychologist that he had a high probability of brain damage. He had been suspected to be intellectually disabled as early as kindergarten. He had suffered a quite remarkably large number of accidents and head injuries throughout the years, including motorcycle accidents and car accidents. And he had a seizure disorder as well. And counsel possessed records, prison records, showing that between the ages of approximately 31 and 38, several prison doctors had suspected that he suffered from brain damage. In addition to the evidence of brain damage, counsel failed to present evidence that Mr. Demetrius had mental illness, including mood instability, schizophrenia, major depression, and had taken psychotropic drugs while in prison. And significantly, just days before the capital crime, Mr. Demetrius was diagnosed with schizophrenia and found to be disabled and in need of constant care. But the jury felt didn't have a chance to hear any of this because trial counsel chose not to present it and instead relied on a defense. I asked you Ms. Collins just to be clear because I thought you said at the outset two things. One, that they didn't, the trial didn't investigate and then didn't present. And I read it more as a claim that the counsel had made a decision, right or wrong, not to present. Was there also evidence that the trial counsel was not knowledgeable of some of the facts that you're talking about now? We have some information that trial counsel performed in an investigation. Many of the facts that I'm discussing, some of them were discovered on post-conviction. But what we do know is that trial counsel had several sources of information from which, and particularly Dr. Hall's evaluation. I guess I'm just trying to understand the claim as I understood it. It was more, he has this constellation of very significant mental issues but chose not to present it. Is that the primary gist of the argument? It is primarily a failure to present this evidence when counsel knew that this was available. And of course there could have performed more investigation to uncover some of the aspects that were beyond what they already knew. But based on just what they knew, it was unreasonable for them to fail to present this large quantity of classic mitigation evidence. Showing that Mr. Demetrioulias had suffered from really an extraordinary number of head injuries, suspected brain damage, mental illness. I know you want to save some time, but I do have a question on prejudice in light of the Shin V. Kier case out of the Supreme Court. I recognize it's not, you know, the facts are different. But it did rest on prejudice and a recent reminder of the Supreme Court's admonition to us as to how to evaluate these cases. So I would appreciate your comment on the application of that case to your particular situation here on prejudice. I'm sorry Your Honor, which prejudice case? Shin V. Kier, which just came out of the Supreme Court in December. You know, Your Honor, I haven't had a chance to consider the application of prejudice in that, as it applies to that specific case. I'd be happy to look into it. Well, I think it's the kind of thing that you, obviously it's important to follow these Supreme Court cases. That's what we're doing. But if you want to address prejudice in a broader sense, that's fine too. You're down to about five and a half minutes. Okay. So just briefly, I would like to say that if we compare the trial that took place to the trial that could have taken place had counsel performed adequately, we have a vast difference. And what the jury saw of Mr. Demetrioulias was someone who had struggled with drug and alcohol addiction and someone whose friends and family had seen it as a nice person who had really suffered with drugs and alcohol. But because they never heard this compelling evidence of brain damage or mental illness, they were not given the opportunity to really consider who Mr. Demetrioulias was as a person and to really give effect to the available mitigation evidence. And if there's no further questions on prejudice, I see I'm running out of time. Do you want to reserve your remaining time? I would, Your Honor. Okay. Before you do that, though, I want to see if anyone on the panel has any further questions right now. No question here. Thank you. I'm fine at this time. Thank you very much. All right. Thank you. Then we'll hear from Ms. Torbanka. Good morning, Your Honors. May it please the Court. Deputy Attorney General Teresa Toroblanco Torapelli. I'll start by addressing the ineffective assistance of counsel claim. Defense counsel in this case extensively investigated whether Demetrioulias suffered from mental illness or brain damage. They had mental health evaluations from two doctors hired by the defense. And they also had two reports from doctors who evaluated Demetrioulias in connection with the whistle offenses. There was a declaration from defense counsel stating that she had investigated Demetrioulias' mental health. And defense counsel stated on the record that she had his prison records regarding his mental health. In Attorney Scalise's declaration, he stated that the reason they did not introduce mental health evidence in this case is because they feared it would open the door to Demetrioulias' past diagnoses of antisocial personality disorder and evidence showing that he was malingering to get drugs. Based on defense counsel's extensive investigation, that decision was virtually unchallengeable. Now, habeas counsel argues that it should have been admitted anyway. But there are several problems with that argument. First is, it is cases of how that it's a reasonable trial strategy not to introduce mental health evidence whereas here it can be impeached with conflicting opinions on the matter. In addition, if defense counsel had introduced mental health evidence, the prosecutor would have introduced evidence by doctors who believed that Demetrioulias was a sociopath, did not suffer from mental illness, and was a malingerer. And if the jury believed that evidence, it would have erased the force of all the other mitigating evidence presented by the defense during the penalty phase, which included evidence of his drug addiction, his remorse, his abusive childhood, and evidence relating to sympathy for his family. Because the evidence shows that defense counsel thoroughly investigated Demetrioulias' mental health and made a strategic decision not to introduce that evidence at the penalty phase, it cannot be said that California's rejection of this claim was contrary to or an unreasonable application of United States Supreme Court authority. Unless the court has any questions on this issue, I will move on to the claim of right issue. I have a question just to confirm something, I think, in my mind. On that last issue, am I correct, this is a double deference standard, getting deference both from the Strickland deference for counsel decisions, and second from the ADPA standard, that the decision would have to be objectively unreasonable? Absolutely, Your Honor. You have a doubly deferential standard here with the Strickland. Thank you. And counsel, are you familiar with Shinbi Kerr? I have not read that case, so I apologize, Your Honor. Well, I'll just tell both counsel, it adopts and reinforces the standard from Penholster. Whether any fair-minded juror could conclude, well, it's more stringent than that. Actually, it's only reversible on grounds of prejudice, if no fair-minded juror could conclude that there had been prejudice. So, both cases reverse the Ninth Circuit, so both cases have that same standard, but the Shin court is saying to us, you have to find that no fair-minded juror could have concluded that, or would have changed their conclusion as to the jury verdict on the claim of IAC. And I know it's a high defense, but it seems to me that, and it's unfortunate because we don't have a declaration from the actual defense counsel who made this decision, but it does seem to me that the declarations from Dr. Kamm and Dr. Rath could have been weighed and considered in context by the jury, if it had only been presented, and it seems as though counsel did have those declarations and could have worked with them and put them in context along with the others, and along with the undisputed facts of both the severe injuries to the head and the other well-documented problems that Mr. Dimitris had since childhood. I'm just wondering whether that was truly a tactical decision on her part or not, to not put in that additional evidence. According to her co-counsel, it was a strategic decision because they both feared it would open up the door to pretty damning evidence that he was a sociopath and that he feigned mental illness in order to get drugs, and there were opinions by prison doctors to that effect as well, so I think there was a real risk in introducing this type of evidence, which counsel recognized, and this wasn't a situation where no evidence was introduced. They did introduce a great deal of evidence in mitigation, and the question here is whether it was reasonable for defense counsel to make this decision, and I think on this record the answer to that question is yes. Okay, didn't counsel put in only evidence from his mother in the penalty phase in mitigation? There was a great deal of evidence regarding his drug addiction, his childhood, his sister testified, there were many witnesses who testified during the penalty phase. Okay. If there are no further questions, I will address the claim of right issue. The California Supreme Court's application of Chapman with respect to that issue was not unreasonable for a myriad of reasons. In this case, defense counsel extensively argued that the jury could find Demetreus lacked the specific intent for robbery if he went to Miller's room to collect a dead body. The prosecutor never disputed that an intent to collect a dead body would undermine the specific intent for robbery. He acknowledged that it was a valid defense, but argued that Demetreus invented that $40 debt to explain his demand for Miller's money, which he knew had been overheard by witnesses. The robbery instruction in this case did not conflict with defense counsel's argument. If Demetreus were truly collecting a debt, he would not have had the specific intent to deprive Miller of Miller's personal property. And the evidence in this case that Demetreus killed Miller during the course of an attempted robbery was overwhelming. Again, witnesses heard him say, quote, give me your wallet right before he stabbed Miller to death. And immediately after stabbing Miller, he went over to Whistle's house where he stabbed, assaulted, and robbed him, which pretty much conclusively establishes that his intent that evening was to commit a robbery. And the evidence also shows that Demetreus told three different versions of what happened that night and changed them based on when he learned that there was evidence that would cast doubt on those defenses. First, he told police he didn't know anything about Miller's murder. When that did work, he told psychiatrists that he had blacked out during that entire period and didn't remember anything from Christmas through his arrest. And when it became clear that was not going to work, he came up with this collection of a debt story. Now, this fact coupled with his flight, which showed consciousness of guilt, and his prior crimes of moral turpitude, which showed a willingness to lie, these things made his testimony completely unbelievable. Okay, counsel, just to clarify for me, so you agree that it was error for the trial court not to instruct in claim of right? I believe that, yes, I do. I do concede that was error. Okay, and do you think it's theoretically possible that the jury could have found that the defendant could have gone to Miller's house to collect a debt and not to rob, but he nevertheless did not assault Miller in self-defense? I don't believe the evidence supports any of his testimony at all, going to rob or acting in self-defense. I'm not sure if I'm understanding you. No, the question is, couldn't you theoretically, couldn't the jury theoretically reject the self-defense defense that accepted the claim of right defense? Not on this record, not in light of the overwhelming evidence showing that he didn't either. He did not go there to collect a debt. I mean, the fact that he says, give me your wallet and then immediately kills him and then kills someone else makes that story pretty incredible. And the self-defense claim, we have a situation where Demetrius was much younger than Miller and smaller in stature. And based on the severity of the stab wounds, that claim is also very hard to believe. Well, what we have, the evidence we have is these testimony and that there was evidence that it did not appear that Miller's room had anything taken from it. There was money in his wallet that could be explained in terms of his activities that day, going to the bank and paying his rent. And when the defendant was arrested, he had money that had belonged to Wiesel, but he didn't have Miller's money. I think the evidence of attempted robbery was not strong in this case. I'm sorry, the evidence of a completed robbery was not strong in this case. But the evidence of attempted robbery was extremely strong. Yes, nothing was taken that we know of from Miller's room, but Hamilton came outside, one of the co-tenants in the boarding house, came outside and asked what was going on and essentially interrupted what was going on upstairs in Miller's room. So I think the reasonable interpretation of that is that Miller did not have time, I mean Demetrius did not have time to complete the robbery. He ran as soon as he heard the downstairs neighbor asking what was going on. But the fact that he went from Miller's house directly to Wiesel's house and did exactly what he failed to complete at Miller's house is very, very strong evidence that his intent was to commit robbery that evening. I assume just because of the way California instructions were at the time that there isn't an inherent inconsistency in a claim of right and a claim of self-defense, correct? Correct. But your argument is that under these facts that there would be an inconsistency. That there would be, I'm sorry? An inconsistency that one wouldn't necessarily override the other. They were consistent, there was no conflict between the two instructions. So he could, the instructions that you have to have the intent to deprive the person of their personal property. But as defense counsel explained, if you are going to collect a debt you do not have that specific intent. Correct. I mean there's three different instructions that are relevant. The self-defense, the robbery with its definition of property and then the claim of right which was the collection of the debt. So that raises another question given the California Supreme Court basically said that self-defense and the claim of right were intertwined. Do you believe that was an accurate statement in this case? I think what the court was saying was that both defenses were based on Demetrius' testimony. And because his testimony was so unbelievable you couldn't really reject one without rejecting the other. Because there was no corroborating evidence for either of those things. And again this was the third story he had told about what happened on the evening of issue. Unless the court has further questions, I will submit. No questions here. Judge Wardlaw? I have no further questions. Thank you. Ms. Collins? Thank you, Your Honor. I have a few points. First of all, opposing counsel appeared to suggest that Mr. Demetrius killed Mr. Whistle after leaving Mr. Miller's house. That may have just been an inadvertent misstatement. But just to clarify, Mr. Whistle's death was not attributable to Mr. Demetrius. So that's the first point. In regards to the ineffective assistance of counsel claim, I'd like to speak for a minute about why the counsel's fear of opening the door to antisocial personality disorder was unreasonable. In this case, the benefits of admitting evidence of brain damage and mental illness far outweigh any risk of opening the door to this aggravating evidence. Particularly where the jury had already heard substantial aggravating evidence. It's unlikely that a diagnosis of antisocial personality disorder would have been more harmful than what they had already heard. And if the jury had been able to hear this evidence of Mr. Demetrius' mental impairment, it only would have contextualized and explained Mr. Demetrius' strategy, his existing strategy, which was that he was a good guy, right? And a good guy who had a drug problem. And even if counsel had... Excuse me, even if they had presented this evidence that Mr. Demetrius had prior diagnoses of antisocial personality disorder, this evidence could have been rebutted by a qualified expert who could have testified that any symptoms of antisocial personality disorder may have also come from frontal lobe disorder because frontal lobe dysfunction often mimics symptoms of antisocial personality disorder. And also, Mr. Demetrius had a very long and clinically authentic history of serious psychiatric disorders. So for those reasons, counsel's fear of opening the door to prior diagnoses of antisocial personality disorder were unreasonably... Excuse me, were unreasonable. But counsel, what about the other testimony within those two experts, which was that he was malingering and he didn't tell the truth? I'm sorry, what about the evidence that... Those reports also contained evidence that the prison doctors who had met with him thought he was malingering and was not a truthful person. And while some prison doctors may have had that belief, there was a wide range of evidence, of other evidence of prison medical records showing that he had been treated for authentic mental illness. And in light of all of that, and particularly in light of the fact that he had been diagnosed with schizophrenia just days before the incident, it was unreasonable for counsel to forgo the presentation of that evidence. If I could make one more point of clarification as to the claim of right defense. The California Supreme Court assumed that the jury rejected Mr. Demetrioulias' self-defense testimony. But we don't really know that the jury did reject the self-defense testimony because of the way that this case was charged and the way that the prosecution proceeded on a felony murder theory. They could have found first-degree murder based on the felony murder and the robbery alone without ever getting to the question of whether he was guilty of deliberate and premeditated murder, which was a distinct first-degree murder theory and one that was not emphasized by the prosecution in this case, which was particularly reliant on the felony murder theory. And I see that I've gone over my time. If I could just conclude by saying that all three of the trial court errors here made it harder for Mr. Demetrioulias to defend against first-degree murder and easier for the prosecution to obtain a conviction. And for these reasons, Mr. Demetrioulias asked that the court reverse the district court's judgment and grant him relief in a new guilt-based trial and also asks to grant penalty-based relief based on trial counsel's ineffectiveness at penalty or at least remand for an evidentiary hearing to the extent that there are any factual issues to be resolved. Thank you. The case just argued of Demetrioulias v. Davis is submitted. We'd like to thank both counsel for your briefing and argument this morning. And we're adjourned.
judges: McKeown, Wardlaw, Gould